UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR S. LIBERMAN,

        Plaintiff,

v.

AMERICAN OSTEOPATHIC
ASSOCIATION, and AMERICAN
OSTEOPATHIC BOARD OF FAMILY
PHYSICIANS,

        Defendants.

Case No. 13-15225

Hon. Patrick J. Duggan

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

Plaintiff Arthur S. Lieberman, a Doctor of Osteopathic Medicine (D.O.), instituted this action against Defendants American Osteopathic Association ("AOA") and American Osteopathic Board of Family Physicians ("AOBFP"), both private entities, after twice failing his board certification reexamination. The AOA, through the AOBFP, administers certification and recertification examinations to those wishing to hold themselves out as board-certified osteopathic physicians. Plaintiff filed this diversity action challenging the denial of his recertification as violative of his common law due process rights and as

constituting tortious interference.  Due to the existence of a choice-of-law

provision in a contractual agreement between the parties, Illinois law applies.

Presently before the Court are Defendants' "Motion for Dismissal," filed

pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendants' Motion for

Summary Judgment, filed pursuant to Rule 56.  Both motions have been fully

briefed and were the subject of oral argument on September 9, 2014.  For the

reasons stated herein, the Court grants Defendants' Rule 12 motion, dismisses

Plaintiff's Amended Complaint with prejudice, and denies Defendants' Motion for

Summary Judgment as moot.

## I.   BACKGROUND

**A.   Factual Background**

Plaintiff completed his osteopathic medicine degree in 1965 and was

licensed to practice medicine in the State of Michigan the following year.  (Am

Compl. ¶¶ 11-12.)  Throughout his nearly five-decade career, Plaintiff has

maintained good standing and retained full licensure in Michigan.  (*Id.* ¶ 13.)  In

addition to developing "a very successful" practice affiliated with "a respected

teaching institute" in Macomb County, Michigan, Plaintiff is a member of

numerous professional associations, is an integral part of teaching programs (and

formerly served as an assistant professor), has held various leadership positions in

his field, and has consistently exceeded his continuing education requirements.
(*Id.* ¶¶ 13-17.)

In 1966, when Plaintiff began practicing medicine, board certification for
family osteopathic physicians did not exist. (*Id.* ¶ 12.) According to Plaintiff,
however, board certification "is [now] unquestionably the most important
physician credential attainable for an osteopathic family practitioner." (*Id.* ¶ 10.)
This is, at least in part, because such certification "is required in order for patients
to be covered by health care and insurance plans[.]" (*Id.*) To obtain certification,
"AOBFP [administers an] examination [assessing] the 'competency and
excellence' of osteopathic family physicians[.]" (*Id.* ¶ 9.) Upon successful
completion of the examination, AOBFP "awards AOA Certification and
subsequent continued Certification to successful candidates." (*Id.*)

Although it is not entirely clear when the AOA began board certifying
physicians, Plaintiff first took the AOBFP examination in 2002 and passed, thereby
becoming an AOA board-certified practitioner. (*Id.* ¶ 18.) Although Plaintiff "was
fully under the impression that his Board Certification was without time limitation,
and that he had been awarded lifetime Certification by Defendants[,]" he later
learned "that his Certification had expired on December 31, 2010." (*Id.* ¶¶ 18-19.)
Upon inquiry, Plaintiff discovered "that lifetime Certification was somehow only
awarded to physicians obtaining Certification prior to 1997," and that he would,

3

therefore, have to retake the certification examination every eight years.[1]  (*Id.* ¶ 19.)  This troubled Plaintiff for many reasons, but mainly because the examination includes topics that are irrelevant to Plaintiff's current practice (such as hospital practice and obstetrical care).  (*Id.* ¶ 20.)  During the earlier stages of Plaintiff's career, he worked in an emergency room and practiced obstetrics, delivering over one thousand children; however, Plaintiff's current "practice is solely office-based[.]"  (*Id.* ¶¶ 13, 20.)

Upon learning that he had to take a recertification examination to retain his board certification, Plaintiff took a review course in the State of Virginia.  (*Id.* ¶ 21.)  In October 2010, and again in October 2011, Plaintiff took AOBFP's recertification examination, passing the practical performance portion but failing the cognitive portion "by a mere few points."[2]  (*Id.* ¶ 22.)  As a result, "Defendants refused to renew [his] Board Certification."  (*Id.*)  Without certification, several

---

[1] Plaintiff does not explain why he waited until 2002 to take the examination when the allegations in the Amended Complaint indicate that board certification began sometime before 1997.  In responding to Defendants' summary judgment motion, Plaintiff attached an exhibit indicating that the AOBFP was established in 1972, albeit under a different name.  (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. C.)  Although the exhibit does not expressly state that certification examinations began in 1972, the establishment of such a body implies as much.  While Plaintiff does not explain his decision to take the examination in 2002, it is entirely possible that insurance carriers did not mandate board-certification as a precondition of coverage until some point after the AOBFP (or its predecessor) began administering certification examinations.

[2] At the September 9, 2014 motion hearing, Plaintiff's counsel indicated that Plaintiff failed one section of the recertification examination by three points.

insurance companies "have disaffiliated him[;] . . . thereby taking away a large number of patients . . . who have relied upon [Plaintiff's] excellent medical and health care for many years and are seriously harmed by being deprived of the physician who has treated many families for decades." (*Id.* ¶ 26.)

Plaintiff challenged the results by appealing the decision to deny recertification to multiple internal review boards, each of which refused to grant him recertification. (*Id.* ¶¶ 24-25.) This lawsuit followed even though, as discussed in greater detail below, Plaintiff signed an Applicant Release Statement ("Release"), otherwise known as a covenant not to sue, prior to (and as a condition of) taking the recertification examination. (Release, Defs.' Mot. Summ. J. Ex. A; Pl.'s Resp. to Defs.' Mot. Summ. J. Ex. E.) In addition to "releas[ing], discharg[ing], exonerat[ing] and agree[ing] to hold harmless the [AOA and] the [AOBFP] . . . free from any action, suit, obligation, damage, expense, claim, demand or complaint" in connection with the application or recertification examination, the Release provides that Illinois law governs any dispute arising between an applicant and the AOA or AOBFP. (*Id.*)

**B.    Procedural Background**

On December 24, 2013, Plaintiff instituted the present civil action by filing a complaint with this Court. On February 4, 2014, Defendants filed a "Motion for Dismissal or Summary Judgment" pursuant to Federal Rules of Civil Procedure

12(b)(6) and 56. Once the matter had been fully briefed, the Court held a motion hearing on May 14, 2014. At the conclusion of that hearing, the Court granted Plaintiff's request to amend his complaint. Fed. R. Civ. P. 15(a)(2).[3] The Court indicated that it would entertain Defendants' motion for summary judgment once an amended complaint was filed and that Defendants could, of course, file another motion to dismiss.

Plaintiff's Amended Complaint, filed on June 4, 2014, contains four counts: Count I – Violation of Common Law Due Process; Count II – Tortious Interference with Contract and/or with Advantageous Business Relationship and/or Expectancy; Count III – Declaratory Relief; and Count IV – Injunctive Relief. (ECF No. 14.) As relief, Plaintiff seeks monetary damages, a declaration that his board certification should be renewed and/or granting him lifetime certification, a temporary restraining order, preliminary, and permanent injunction requiring reinstatement of Plaintiff's board certification, and a temporary restraining order,

---

[3] The Court deemed amendment proper because Plaintiff failed to allege or otherwise indicate that Illinois law applied by virtue of the choice-of-law provision contained in the recertification application. Without such an allegation, the Court would have analyzed the sufficiency of Plaintiff's Complaint pursuant to Michigan law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case [involving diversity jurisdiction] is the law of the State."). Alternatively, the Court could have considered the Release submitted by Defendants, but this would have converted the motion into one for summary judgment. Fed. R. Civ. P. 12(d). The Court did not find this latter avenue optimal, as the briefing on the validity of the Release under Illinois law was insufficient.

preliminary, and permanent injunction preventing AOA and AOBFP from requiring any conditions for board certification other than a valid medical license.

Defendants moved to dismiss Plaintiff's amended pleading pursuant to Rule 12(b)(6) on June 18, 2014. (ECF No. 17.) Plaintiff responded on July 3, 2014 (ECF No. 19) and Defendants replied on July 16, 2014 (ECF No. 20). Prior to the filing of the amended pleading, Defendants filed a summary judgment motion bearing on the validity and enforceability of the covenant not to sue. (ECF No. 13.) The summary judgment motion has been fully briefed.[4] (Pl.'s Resp. to Defs.' Mot. Summ. J., ECF No. 15; Defs.' Reply to Mot. Summ. J., ECF No. 18.)

## II.   GOVERNING LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a court to assess whether a plaintiff's pleadings state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). As articulated by the Supreme Court of the United States, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)

---

[4] "The Court takes this opportunity to advise the parties that it thoroughly reviews summary judgment briefs, and thus, neither needs nor desires extensive bolding or italicizing throughout those briefs. *See* Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 122 (1st ed. 2008)." *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 857 n.5 (E.D. Mich. 2011). While on the subject of brief formatting, the Court notes that the Local Rules, as amended in July 2013, require the use of 14-point font. E.D. Mich. L.R. 5.1(a)(3).

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)).  This facial plausibility standard requires claimants to put forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the requisite elements of their claims.  *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965. Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do

8

not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).   In conducting its analysis, courts may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

### III.   ANALYSIS

#### A.   Applicable Law

This Court has jurisdiction over the present dispute on the basis of diversity of citizenship.  28 U.S.C. § 1332.  In cases invoking diversity jurisdiction, federal courts apply the choice-of-law rules of the state in which it sits to resolve questions of substantive law.  *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.") (citations omitted).  The parties to this action agree that Michigan's choice-of-law rules require enforcement of the forum selection clause contained in the Release, which Plaintiff signed as a part of his application

to take the recertification examination, and that Illinois law therefore governs this action.  Accordingly, this Court applies the substantive law of Illinois.

**B.      Motion to Dismiss**

*1.      Count I – Common Law Due Process*

In Count I of his Amended Complaint, Plaintiff alleges that Defendants, both private organizations, violated his common law due process rights by not granting him recertification or by not granting him lifetime certification when he initially became board-certified in 2002.

Illinois law recognizes a cause of action for a common law due process violation by a private actor in limited circumstances.  "Under Illinois law, a court may review the internal procedures of a voluntary association with respect to its members only when: (1) the operation of the association significantly harms an important economic interest of the plaintiff belonging to the association when it acted; (2) the association (a) failed to act in accord with its own constitution and bylaws[5]; (b) was influenced by bias, prejudice, or lacking in good faith, or (c) violated due process."  *Austin v. Am. Ass'n of Neurological Surgeons*, 120 F. Supp. 2d 1151, 1152 (N.D. Ill. 2000).   Put slightly differently, once a claimant shows

---

[5] Plaintiff does not contend that Defendants failed to act in accordance with internal operating procedures.  Rather, Plaintiff appears to acknowledge that Defendants enforced the certification requirements when both entities refused to recertify Plaintiff unless and until he received a passing score on the recertification examination.  The Court, therefore, need not address this issue any further.

"economic necessity, federal review of the actions of a voluntary association with respect to its members is limited to . . . whether the decisions are 'arbitrary and unreasonable' and whether they are supported by 'substantial evidence.'" *Peoria Sch. of Bus., Inc. v. Accrediting Counsel for Continuing Educ. & Training*, 805 F. Supp. 579 F. Supp. 579, 582 (N.D. Ill. 1992).

Defendants seek dismissal of Count I on two grounds: first, that Plaintiff has failed to demonstrate economic necessity, and second, that even if he has, Plaintiff has failed to allege sufficient facts plausibly suggesting that the recertification examination was arbitrary, unreasonable, or otherwise violative of Plaintiff's rights. The Court addresses the economic necessity prong prior before examining the arguments set forth challenging the recertification scheme itself.

The seminal case in Illinois on the subject of the economic impact necessary to trigger judicial review is *Treister v. American Academy of Orthopaedic Surgeons*, 78 Ill. App. 3d 746, 396 N.E.2d 1225 (Ill. Ct. App. 1st Dist. 1979). In a case of first impression, the Illinois Court of Appeals addressed the permissible scope of review courts may employ to examine decisions by private professional associations to reject an application for membership.[6] *Id.* at 752, 396 N.E.2d at

---

[6] Although *Treister* involved application for membership, not certification, "the rule for reviewing applications has also been applied to nonmembership organizations that provide evaluations, certification, or accreditation." *Busse v. Am. Bd. of Anesthesiology, Inc.*, No. 92 C 5613, 1992 U.S. Dist. LEXIS 18948, at *6-*7 (N.D. Ill. Dec. 11, 1992) (unpublished) (citing cases).

1229.  Although the case is distinguishable from the circumstances here in that there was no release at issue, the case is one of the leading state law cases in Illinois discussing the meaning of "economic necessity."  The plaintiff in *Treister* was licensed to practice medicine in the State of Illinois and was board-certified by the American Board of Orthopaedic Surgery.  *Id.* at 748, 396 N.E.2d at 1227.  In effort to further bolster his credentials, the plaintiff sought membership in the American Academy of Orthopaedic Surgeons.  *Id.*  The plaintiff's application was rejected and he filed a lawsuit, alleging that membership in the academy was a practical necessity in the practice of orthopaedic surgery.  *Id.*  Upon surveying case law from other jurisdictions, the court noted that it was required to balance two competing interests: the right of private, voluntary associations to set membership qualifications and the right of individuals to pursue their profession.  *Id.* at 755, 396 N.E.2d at 1231.  Endeavoring to reconcile these interests, the court held that:

> [Illinois] courts can review the application procedures of a private association when membership in the organization is an economic necessity.[7]  We approve of the opinions . . . hold[ing] that a medical society cannot arbitrarily deny membership to an applicant when the society controls access to local hospital facilities and thus can deprive the applicant of his ability to practice medicine.

---

[7] In holding that a claimant must demonstrate an economic necessity, the court rejected the "practical necessity" standard urged by the plaintiff and followed by at least one jurisdiction.  *Treister*, 78 Ill. App. 3d at 755-56, 396 N.E.2d at 1232.  As the court explained, following such an approach would open the floodgates to litigation, as "membership in most organizations results in some professional or economic benefits."  *Id.* at 756, 396 N.E.2d at 1232.

12

*Id.* (internal citations omitted); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 249 (7th Cir. 1995) ("Illinois does not permit professional associations full sway over admissions criteria if membership is an 'economic necessity.'") (quoting *Treister*).

Applying this holding, the court rejected the plaintiff's claim because he had not alleged that membership in the academy was an economic necessity.  *Treister*, 78 Ill. App. 3d at 755, 396 N.E.2d at 1323.  Specifically, plaintiff was a member of the attending staff at seven Chicago hospitals, thereby demonstrating that membership in the academy was not a prerequisite to hospital staff privileges.  *Id.* Further, "plaintiff was board-certified and licensed by the State without academy membership."  *Id.*

Subsequent cases addressing the requisite showing for an economic necessity provide some guidance on the amount of loss that must be sustained. *Compare Austin v. Am. Ass'n of Neurological Surgeons*, 253 F.3d 967, 971 (7th Cir. 2001) (no important economic interest shown where plaintiff experienced a 65% drop in earnings (from $220,000 to $77,000) from providing expert medical testimony which was "a sideline to his primary profession, which is that of a neurosurgeon," and from which plaintiff continued to earn substantial income) *and Kaneria v. Am. Bd. of Psychiatry & Neurology, Inc.*, 832 F. Supp. 1226, 1230 (N.D. Ill. 1993) (no economic necessity where certification would result in 7.8%

salary increase) *with Brander v. Am. Acad. of Orthopaedic Surgeons*, No. 10 C

8161, 2012 U.S. Dist. LEXIS 138833, at *22 (N.D. Ill. Sept. 27, 2012)

(unpublished) (finding economic necessity where plaintiff earned 73% of his

income from medical legal support and the revocation of his board certification

would result in his inability to provide medical legal support, his principal source

of his livelihood, in the future) *and Busse v. Am. Bd. of Anesthesiology, Inc.*, No.

92 C 5613, 1992 U.S. Dist. LEXIS 18948 (N.D. Ill. Dec. 11, 1992) (unpublished)

(finding economic necessity where certification was required for the plaintiff-

anesthesiologist to access to area hospitals).

In this case, Plaintiff has not quantified the amount of his losses. However,

Plaintiff contends that board certification is an economic necessity because it is

required for coverage by many insurance companies, as evidenced by the fact that

several have disaffiliated him because of his failure to obtain recertification. (Am.

Compl. ¶ 36.) For purposes of the present motion, the Court is willing to draw the

reasonable inference that the loss of coverage by several major health insurance

providers resulted in economic harm such that Plaintiff has sufficiently alleged that

certification is an economic necessity.[8]

---

[8] Because the Court finds that Plaintiff has alleged that certification is an
economic necessity, it declines to address the parties' arguments regarding whether
or not Defendants' purported monopolistic control over board certification of
osteopathic doctors further supports a finding of economic necessity.

That Plaintiff has cleared the economic necessity hurdle does not mean that he has sufficiently pled an action for common law due process. According to Defendants, even if Plaintiff has alleged an economic necessity, Count I fails to state a cognizable claim because Plaintiff has failed to allege facts supporting his assertion that Defendants acted in an arbitrary and unreasonable manner. *Peoria Sch. of Bus.*, 805 F. Supp. at 582.[9] Plaintiff disagrees, arguing that the following facts establish arbitrary and unreasonable conduct and are thus sufficient to withstand a motion to dismiss: (1) Plaintiff has extensive clinical experience stretching back to 1966; (2) the recertification examination  tested Plaintiff's knowledge of topics such as "hospital practice and obstetric care, . . . which [Plaintiff] has either never practiced or has not practiced in over 20 years[]"; (3) Defendants granted lifetime certification to those taking the examination prior to 1997 irrespective of how long they practiced in the field; (4) other licensed professionals, such as legal professionals, do not have to pass examinations for

---

[9] As both parties have noted, this case stated that "inquiry into the association's action is properly left for consideration on a motion for summary judgment, and not on a motion to dismiss." *Peoria Sch. of Bus., Inc. v. Accrediting Counsel for Continuing Educ. & Training*, 805 F. Supp. 579 F. Supp. 579, 583 (N.D. Ill. 1992). Although Plaintiff would like the Court to deem this language dispositive with respect to whether he has stated a viable claim, the Court agrees with Defendants that this rule has been undermined by the Supreme Court's more recent articulation  of what a plaintiff must allege to withstand a motion to dismiss. Because plaintiffs must now allege facts plausibly giving rise to an entitlement to relief, the Court does not believe that inquiry into Defendants' conduct should await summary judgment.

membership in private associations; and (5) the examination usurps the medical

licensing procedures of the State.  (Am. Compl. ¶¶ 37(A)-(D), (F).)

Analyzing these allegations under the framework set forth in the trial

court's opinion in *Austin*, the Court first looks to whether Defendants' actions were

(1) "influenced by bias, prejudice, or lacking in good faith, or" whether the actions

(2) violated Plaintiff's due process rights.  120 F. Supp. 2d at 1152.

To the extent Plaintiff argues that Defendants engaged in "willful and

wanton" acts, the Court disagrees.  (Am. Compl. ¶ 36.)  Bearing in mind that

willful and wanton conduct is a legal term, merely alleging that conduct is willful

and wanton is insufficient to withstand dismissal.  *Iqbal*, 556 U.S. at 678, 129 S.

Ct. at 1949 (explaining that the presumption of truth accorded to a plaintiff's

factual allegations does not apply to a claimant's legal conclusions); *id.* (noting

that the pleading requirements imposed by Rule 8 "demand more than an

unadorned, the-defendant-unlawfully-harmed-me accusation") (citation omitted).

The Amended Complaint's factual allegations do not shore up this deficiency.

Plaintiff falls short of alleging willful and wanton acts, as such acts require a

showing of an "actual or deliberate intent to harm[.]"  *Oelze v. Score Sports

Venture, L.L.C.*, 401 Ill. App. 3d 110, 122, 927 N.E.2d 137, 148 (Ill. App. Ct. 1st

Dist. 2010) (quotation omitted).  If unintentional, willful or wanton conduct may

be found where the entity "conscious of [its] conduct, and, . . . from [its]

16

knowledge of the surrounding circumstances and existing conditions, [knows] that [its] conduct will naturally and probably result in injury." *Id.* at 122-23, 927 N.E.2d at 149 (quotation omitted).

Administering an examination on a variety of subjects properly categorized as falling within the purview of the practice a family osteopathic practitioner is simply not, as a matter of law, willful and wanton.[10]  Neither is Defendants' decision to stop awarding lifetime certification in 1997.  These allegations, and the fair inferences to which they give rise, do not plausibly demonstrate an intent to harm.  Further, because willful and wanton is typically employed in the negligence context, and because negligence is not included in *Austin*'s recitation of the elements of a common law due process claim, Defendants' consciousness or knowledge of possible consequences to doctors failing the recertification examination is insufficient to state a claim.  *See Austin*, 120 F. Supp. 2d at 1152 (including actions "influenced by bias, prejudice, or lacking in good faith" as permissible avenues to challenge a private association's conduct, each of which carries a connotation of wrongdoing beyond mere knowledge).

---

[10] Although the determination of "[w]hether conduct amounts to willful and wanton negligence is generally a question of fact for the jury," *Oelze v. Score Sports Venture, L.L.C.*, 401 Ill. App. 3d 110, 123, 927 N.E.2d 137, 149 (Ill. App. Ct. 1st Dist. 2010), in applying Illinois law, the Court may "decide as a matter of law whether the plaintiff's complaint alleges sufficient facts of a defendant's willful and wanton conduct to create a jury question[,]" *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 244-45, 864 N.E.2d 176, 194-95 (2007).

Turning now to whether Plaintiff's due process rights were somehow infringed by Defendants, the Court notes that a showing of economic necessity only permits the Court to "review the [contested] application procedures[.]" *Treister*, 78 Ill. App. 3d at 755, 396 N.E.2d at 1231.  This review is limited to whether the procedures are arbitrary.  *Id.*  There does not appear to be anything arbitrary about Defendants' decision to administer an examination to those seeking either certification or recertification.  *See Sanjuan*, 40 F.3d at 249 ("To fulfill its mission of identifying specialists, the Board must disappoint others[.]").  That Plaintiff no longer engages in hospital practice or obstetrics does not mean that Defendants are precluded from testing his knowledge of those subjects, particularly since Plaintiff sought board certification in the field of family medicine, not something more specialized.  As Defendants argue, there is no requirement that a private association individually tailor a general certification examination to fit each applicant's specific practice.  While the Court recognizes that Plaintiff has enjoyed a long and successful career, this does not demonstrate that Defendants' decision to test general knowledge in a given field is arbitrary or unreasonable.[11]  *Cf. Miller v. Dep't of Prof'l Regulation*, 276 Ill. App. 3d 133, 658 N.E.2d 523 (Ill. Ct. App. 2d

---

[11] Plaintiff suggests Defendants refused to recertify Plaintiff "without any evidentiary support, simply due to his failure to pass one part of an examination by a mere few points[.]"  (Pl.'s Resp. 16.)  The Court does not follow this logic, as failing one portion of a two-part examination provides evidentiary support for the decision not to recertify Plaintiff.

Dist. 1995) (upholding state statute requiring engineers to pass a competency

evaluation for licensure irrespective of length of professional practice in a case

where an engineer with roughly twenty years of experience took the examination

and failed).[12]

Plaintiff also challenges Defendants' decision to "grandfather" only those

who obtained certification prior to 1997 as arbitrary.  (Am. Compl. ¶ 37(C).)

However, all "'grandfathering' necessarily distinguishes between individuals based

on nothing more than timing."  (Defs.' Br. 18.)  Plaintiff, who has been practicing

since 1966, could have taken the examination prior to 1997 and received the

benefit of being grandfathered in, but he did not.  Plaintiff alleges that he believed

he was granted lifetime certification in 2002, thereby benefiting from the very

grandfathering he now attacks as arbitrary and unreasonable.  (Am. Compl. ¶ 18.)

Thus, he does not really contend that grandfathering is arbitrary; rather, Plaintiff

believes he should have been grandfathered due to his distinguished and lengthy

---

[12] The parties dispute the relevance *Miller*, and others cited by Defendants, on the basis that *Miller* involved state licensing procedures.  The Court agrees with Defendants that *Miller*'s endorsement of examinations for state licensing is instructive as to the propriety of a private association's use of functionally similar examinations for certification or recertification.  This is because states are bound by the Fourteenth Amendment's due process clause, whereas purely private actors are not.  If the examination in *Miller* did not run afoul of the due process clause, the examination at issue here is insufficient to state a claim for a deprivation of common law due process, as private actors are held to a lesser standard than state actors.  *Cf. Sanjuan*, 40 F.3d at 250 (explaining that non-state actors "need not use the procedures the due process clause requires of the government").

career.  In any event, the Supreme Court has upheld the practice of grandfathering.
*Watson v. State of Maryland*, 218 U.S. 173, 30 S. Ct. 644 (1910) (upholding state
statute exempting doctors practicing before a certain date and verifying they had
treated a certain number of patients from state licensing provision).  Although
*Wilson* is distinguishable in that the doctors were exempt from the statute's
requirement based on rough measures of skill (length of practice and number of
patients seen), it is indisputable that the case permitted grandfathering.  "If a
governmental unit may use a grandfather clause, there appears no reason why a
private association may not."  *Dietz v. Am. Dental Ass'n*, 479 F. Supp. 554, 561
(E.D. Mich. 1979).

Further, Plaintiff's suggestion that Defendants acted arbitrarily in
administering an examination above and beyond what the State of Michigan
requires in its licensure procedures lacks merit, as AOA certification is not a
precondition to the practice of osteopathic family medicine in Michigan.  *Sanjuan*,
40 F.3d at 250 ("[The Board] does not issue licenses to practice; it simply certifies
achievement of a standard of excellence.").  Michigan has not taken any action to
rescind Plaintiff's medical license in light of his failure to obtain recertification.
(Am. Compl. ¶ 13 (explaining that since obtaining his license to practice in the
State of Michigan, Plaintiff has "maintain[ed] continuous good standing and full
licensure by the State").)  Plaintiff cites no authority for the proposition that a

private association's certification requirements must parallel state licensing requirements. If this was the case, the board certification scheme would be devoid of meaning.

Lastly, the Court is hard-pressed to discern what more process was due. Plaintiff took the recertification examination twice and internally appealed Defendants' decision to deny recertification multiple times.

In sum, the Court is sympathetic to Plaintiff's claims. He has served his patients and the broader medical community for several decades and has been honored on many occasions. It is indeed unfortunate that several insurance companies have disaffiliated him, thereby requiring many of his patients to seek treatment elsewhere. But the scope of this Court's review is limited, and does not include the authority to dictate, by judicial fiat, who is or is not qualified for board certification by private actors. As aptly stated in *Brandner*, a court's "limited review of an association's actions regarding its members does not permit it to review whether the decision was right or wrong, but simply whether it was made without bias, prejudice or bad faith . . . and in the absence of a due process violation." No. 10 C 8161, 2012 U.S. Dist. LEXIS 138833, at *37.

Plaintiff has not provided this Court with a single case in which an Illinois court deemed the conduct alleged here either unreasonable or arbitrary and the Court is not persuaded that the challenged practices are capable of being construed

21

as such.  Because "[f]ederal courts hearing diversity matters should be extremely cautious about adopting 'substantive innovation' in state law[,]" particularly state law in a state other than one in which the court sits, the Court dismisses Count I because Plaintiff has not alleged sufficient facts showing that he is entitled to relief.  *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004).

### 2.    *Count II – Tortious Interference*

In Count II, Plaintiff seeks to state a claim for either tortious interference with a contractual relationship or tortious interference with a prospective business relationship.  Defendants assert that Count II is subject to dismissal because Plaintiff has failed to allege that Defendants acted with malice or that their actions were unjustified.

In Illinois, the elements of a claim for tortious interference with a contractual relationship are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Simmons v. Campion*, 2013 IL App (3d) 120562, ¶ 29, 991 N.E.2d 924, 930 (Ill. App. Ct. 3d Dist. 2013) (internal quotation marks and citation omitted).  "[I]f a defendant's conduct is privileged, the plaintiff carries the burden of pleading and proving that the conduct was malicious." *Id.* ¶ 30 (citing *HPI*

*Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 156-57, 545

N.E.2d 672, 677 (1989) (describing "malicious" conduct as that which

intentionally interferes with the plaintiff's contract and is unjustified)).  The

determination of whether a defendant's conduct is privileged entails a judicial

assessment of whether "the defendant was acting to protect an interest which the

law deems to be of equal or greater value than the plaintiff's contractual rights."

*HPI Health Care Servs.*, 131 Ill. 2d at 157, 545 N.E.2d at 677.

To plead a cause of action for tortious interference with a prospective

business relationship, Plaintiff  must allege "that he has a reasonable expectation of

entering into a valid business relationship, [Defendants] knew of the expectancy

and intentionally and maliciously interfered with the expectancy and that he was

injured."  *Kruger v. Menard Elec. Coop.*, 169 Ill. App. 3d 861, 864-65, 523 N.E.2d

708, 710 (Ill. App. Ct. 4th Dist. 1988).

At issue in both tortious interference claims is the element of whether

Defendants' conduct was unjustified or malicious.  Plaintiff's allegation that

Defendants' acted maliciously and without justification is insufficient to make it

so.  (Am. Compl. ¶ 48.)  To survive a motion to dismiss, a plaintiff's pleading for

relief must provide "more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 127 S.

Ct. at 1964-65.  Plaintiff has not alleged any conduct permitting this Court to infer

23

that Defendants acted wrongfully in connection with Plaintiff's failure to obtain recertification. As a result, Plaintiff fails to state a plausible claim for tortious interference under either legal theory presented in his amended pleading and the Court, therefore, dismisses Count II.

**3.**     ***Counts III and IV – Declaratory and Injunctive Relief***

Counts III and IV, for declaratory and injunctive relief, respectively, do not state causes of action but rather seek various forms of equitable relief. Because Plaintiff has not alleged any plausible claims in his Amended Complaint, he has not shown an entitlement to either remedy. As such, Counts III and IV are dismissed.

## IV.    CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that Plaintiff has failed to state a claim for relief under any of the legal theories set forth in his Amended Complaint. For this reason, the Court need not reach the arguments briefed by the parties regarding the validity of the Release signed in conjunction with Plaintiff's recertification application.

Accordingly,

**IT IS ORDERED** that Defendants' "Motion for Dismissal" (ECF No. 17) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary

Judgment (ECF No. 13) is **DENIED AS MOOT**.

Dated: October 29, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Mayer Morganroth, Esq.**
**Richard A. Joslin, Jr., Esq.**
**Trent B. Collier, Esq.**